Case 16-5339, Judicial Watch, Inc., Appellant v. The United States Department of Homeland Security Mrs. Burke, Appellant. Mrs. Carroll, Appellant. Good morning. Good morning. Thank you, Your Honors. Lauren Burke, arguing for Appellant, Judicial Watch. Your Honors, if I may, I'd like to talk a little bit to you about actual, factual details, because that is essentially why we are here today, the basis of a dismissal of a complaint at the pleading stage. And yet, if we take a look at the complaint itself, there are real, solid, concrete, actual, factual details that support the allegation that there is a policy or practice, claim, or conduct ongoing at the Department of Homeland Security. So the district court said there was no statement as to why or how, and under it all, the fact that they may have a practice and policy. What the government argues is there's no allegation of, how do they put it in their brief, they say, deliberate mishandling of your request. Well, that is correct. That was what the lower court did say, but what I would argue is that it's not necessary to have a deliberate mishandling. The burden is not on the plaintiff at the time to detail and identify any specific policy that may be being held at the agency. What needs to be included in the complaint is enough detailed facts so that the court can infer the allegation to be true. So in your opposition to the motion for judgment on the pleadings, you made the point, as I understand it, on page 10 of that opposition, as to what your theory was. And you contrasted that with the fact that the burden was on the government, and yet as soon as you filed litigation, the government responded very quickly. Why is that a sufficient allegation of a policy or practice, the implication of which is the policy and practice is somehow inconsistent with the government's obligations? The policy and practice that we are alleging is ongoing, which essentially is continued delay and no response until we do file suit. So Congress said, essentially, I just need some help on this. Congress said the government should respond in 20 days, sometimes 30, and Congress thought the fact that if it didn't, the requester could go to court, was going to be sufficient incentive for the government to comply. Because once it gets into court, the government's no longer in control. Correct. Why isn't that consistent with the statutory scheme such that your complaint by merely saying they delayed is not enough? Well, the stage that this was dismissed at was right on the pleading stage. And so the factual details to support the allegation and should have been pursued a little bit further, whether it was to a summary judgment stage. But I think the question that's being asked is, why do we assume that there's something to be pursued unless we think that there's a statutory violation to begin with? And on the question of whether there's a statutory violation to begin with, your allegations are that there's been a routine effort on the part of the government not to respond within 20 days. And the government's response is, so what? Because, as I understand it, because 20 days isn't a statutory requirement to begin with. All it is is an opportunity for the government to avoid getting taken straight to court without having an administrative exhaustion procedure put in place. And so the government's point is, well, you can allege all you want that the 20 days has been routinely missed, but that doesn't allege something that gives rise to a claim, because that's not a violation of the statute. That's correct, which is why we brought this second claim, the policy and practices claim. It steps a little bit further while there is jurisdiction. What does it go further? Because I thought the policy and practice claim is just that there's a policy and practice of routinely going past 20 days. Routinely not responding specifically to Judicial Watch FOIA requests with regards to VIP travel. Every single one of the requests identified in the complaint, and there is now an attached related complaint in the lower court as well as an additional... But when you say routinely not responding, you mean not responding within 20 days? I mean not responding at all until litigation is filed. Okay, but what's the significance of a difference between 20 days and litigation being filed? Because I thought the point here is that once 20 days goes by without a response, that benefits you, a requester, because then a requester can go straight to court. Correct. Right? And so I'm not sure I see a difference between missing the 20 days and being straight in court, because it seems like the direct result of missing the 20 days is that the requester can go straight to court. So they seem like they're the same thing. And then the question becomes, and maybe I'm wrong about that, but they seem like they're the same thing. And then if they are, then the question becomes, why is there a violation at the point that the 20 days is missed and the requester gets to go straight to court? That just seems like the way FOIA works. There's an administrative process, and then there's potentially a judicial process. But just because the judicial process has been triggered doesn't mean that there's been a violation of FOIA. It's a part of FOIA that the judicial process comes into being. I would respectfully disagree that once the... No response within 20 days or any due diligence and efforts to search and produce records is a violation of FOIA. Okay, but due diligence to search, that seems like that's a different thing, because what the statute presupposes is that there's a 20-day period for the government to have the opportunity to respond. And if the government doesn't respond within 20 days, well, then you get to go straight to court. You don't have to go through the administrative appeal architecture. You get to go straight to court. And then when you go straight to court, well, then the court takes a look at what's been going on, and if the court concludes that the government's exercising due diligence, well, then everybody's fine. But if the court doesn't conclude that the government's exercising due diligence, then I assume what happens... I mean, you tell me you've done a lot of these cases, but I assume what happens at that point is then the court will make a conclusion that the government's been dilatory in the way it's responded to your request, and they'll enter an order that requires the production of documents. Correct. But your complaint is not predicated on the courts ultimately entering an order. What your complaint is predicated on is the government's missing the 20 days. And it just seems like at that point, if I'm understanding it correctly, we don't know that there's been a statutory violation yet, because missing the 20 days could be fine. Well, and I respectfully understand that you are correct in the understanding of FOIA. The complaint here and the claim before this court on appeal is actually the second claim, which is the policy and practices... Right. I'm a little confused by your response to Judge Chernivasan, because I understood your claim to be that non-production within 20 days, or in unusual circumstances cases, non-production within 30 days is a violation of statute. It is. Period. You've been subjected to multiple violations of the statute. In fact, a practice of violations of the statute. And you have many filings to show. You have a chart in your briefing to show you have allegations in the complaint of other similar cases where the government did not meet the requirements of the statute. So you have a pattern of violations of the statute. And that's why, even though once you file a suit, they've produced documents, it's not moved because of the pattern allegations, right? Correct. So it's not that they haven't violated the statute. It's not that the only thing that happens when 20 days has passed is that, well, you don't have to exhaust. It's that actually your rights have been violated. Correct. Okay. You think that there's actually a statutory violation every time the 20 days is missed? There is. Yes. Really? So that means that there's a successful... Can you get attorney's fees? Yes. Every time the 20 days is missed, there's attorney's fees as a possibility. Well, you can seek... Then what happens in a situation in which 20 days is missed? It goes to court, and the court says the government's exercising due diligence. I think that's a possible factual scenario, right? The 20 days is missed. Correct. You go straight to court, and the court says the government's exercising due diligence. Has there been a statutory violation? Of FOIA itself? The specific... Of the only statute that I think is an issue, which is FOIA, right. Is there a violation of FOIA when the government misses the 20 days, it goes to court, which is your entitlement to do after 20 days, and the court gets involved in the process, and the court says, per the statute, that it can retain jurisdiction and allow the agency additional time to complete its review of the records because the agency's exercising due diligence in responding to the request? Yes. There's already been a violation of the statute, even though the court makes that determination. The violation, well, the remedy for the violation by the agency, by the government, is that the plaintiff can go to court. Right. So you think it's a relevant violation of the statute that what happens is you get to go to the court, only to have the court say the government's doing fine because it's exercising due diligence. I must be misunderstanding your question. Okay, let me see if I can... Maybe I'm misunderstanding how FOIA works, but as I understand it, the government misses the 20 days, you go to court. You can go to court after 20 days. You have a right to go to court. You have a right to go to court, and let's suppose that you do. Yes. You go to court, and then the government says to the court, before you come down on us, there's a statutory provision that says that as long as we're exercising due diligence in responding to the court, in responding to the request, excuse me, the court may retain jurisdiction and allow the agency additional time. The statute says that the court can do that. It does allow that. Right. They'll provide that to me. So let's take this out and say that that happens. The court says, okay, now I've looked at everything that's been going on. Yes, you missed the 20 days, but I think you're exercising due diligence, and so I'm going to give you more time. Do you think that there's been a violation of FOIA? To the extent that the agency did not fill its obligations to respond or do what they were required to do under the statute within the 20 days, thereby giving plaintiff the remedy to go to court. Further violation of FOIA, is that what the question is? I think his question is who pays when instead of FOIA functioning so that when you request you get the documents, you've actually had to go to court and spend the time and money. The question is, let's say the government asks the court for more time. We need more time. We're searching. We're diligently searching. In fact, we've set up some great new systems. We're speeding everything up. Can you, before you order us to produce, can you give us three more months? And the court looks at the proffer and says, you seem to be doing a reasonable job. We'll give you three more months. Then after three months, you get your documents. And then you turn around and you say, okay, who pays? Do we have a fee petition against the government? Because even though the court gave the government the three months and said they were making reasonable progress in reducing their backlog, there's still an underlying violation that caused you to have to go into court rather than just go ask the agency and get the documents. And the question is, do you have a claim for fees because of the underlying violation of the 20-day deadline? I understand your question, yes. And it actually is a little bit of a topic that we talk about, and I haven't specifically litigated it. The question is whether or not, if the court becomes involved, required, or has the right of the plaintiff, which incurs costs and all that sort of thing, and issues an order, whether it be you have six months or anything like that, then, yes, once a court order has been issued, the plaintiff has a right to go collect attorney's fees. All right, so let's focus on this case, which I didn't understand to be about attorney's fees, but I understand my colleague's focus. Your opposition to the motion for judgment on the pleadings articulated the theory that the repeated failure to respond within the initial 20-day period was an abuse of the statute by the government. And you adopted, as this court did in Paine, the Ninth Circuit approach in law, that you've got 19 requests, and none of them are responded to within 20 days, and that that was the theory of your case, not the individual 20-day violation. It gives rise, well, let's not use the word violation, but the government's failure to meet the 20 days is not the statutory violation on which you're suing. Rather, it's that Congress said you are entitled to these documents, and the burden is on the government to demonstrate you are not. And I understand that theory, and what I'm trying to understand is the point that Judge Srinivasan, I thought, was exploring with you, is Congress did say all that, and indeed this court has commented on, particularly Judge Leventhal, on the concern about the court sort of shifting the burden here to the requester instead of the government. But the problem, or not the problem, but the issue I'm trying to understand is Congress said, yes, you do have a right. The burden is on the government to show you don't have that right. And as you've been exploring with the judge, you get to go to court, and normally the fact that you get to go to court is not enough to show harm, and you're not alleging here that you had any timely need for this particular information, but that you were entitled to it. If I may answer, I've run out of time. I know, but we've been taking up a lot of time with your questions, and so that's why I started out by saying the government's position is that your complaint at least has to show or allege some misconduct, almost in the sense of bad faith by the government, that mere delay is not enough given this statutory scheme. That is correct, yes. If I may point out that the plaintiff's complaint does indicate, it gives the actual factual details of 19 requests over a period of two years that went completely undetermined. These are very simple routine requests that, again, within the complaint, the four corners of the complaint, the plaintiff did state with factual basis that they were personally harmed, they have been unable to gather and collect this data and distribute it to their members. As well, they anticipated a sufficient likelihood of future harm, given that there have been five prior litigations filed. This was one litigation composing of 19 requests, and at the same time there was a related case that has stayed in the lower court right now. The related cases are mentioned in the appendix, page 6, at paragraph 7 of the complaint. You also, in paragraph 16 of the complaint, on page 8 of the joint appendix, mention some incomplete responses. How do those relate? Are those incomplete responses relating to those five cases, or are those wholly separate? This is where you talk about press releases about production of records. Correct. Related to golf vacations and Italy trips, but you also note in those press releases that certain documents still have not been presented. Are those a subset of further articulation of the course of production of the lawsuits mentioned in paragraph 7, or is it a whole separate set of facts relevant to the pattern? You're comparing paragraph 16 to paragraph 7? Yes. Paragraph 7 is specifically the five prior litigations that were based on the identical requests submitted here that required Judicial Watch to go to court, litigate, and that was the only way records were produced. I apologize. I was not specifically involved with each of those individual prior litigations, but as far as paragraph 16, those are separate set of facts to show what Judicial Watch does with the information that they gather in their requests for this information, and having been without requests over a period of two years to 19 of the requests submitted, they have been harmed by being unable to fully include the data and the information into here because the Secret Service is just one component of the FD Travel-related document. You may not know the answer to this, but the specific question I had was whether paragraph 16 is those productions were productions without litigation, those incomplete productions, or were those incomplete productions a result of the litigation mentioned in paragraph 7? You may not know. No. I think I comprehend your question a little bit better. So these are examples of, and as I said, when we put out the press releases related to VIP travel costs, it involved several different agencies, including Secret Service and Department of Defense. In order to put that information out, part of the press release noted that Secret Service had failed to respond to the request. So those went out. Now, I don't know that I would maybe be able to get back to you at a later date to match up specifically if these press releases are related to the litigated requests that are mentioned in paragraph 7. I just wondered if this was further information about the breadth of the pattern, or I recognize that it's in the complaint going to harm. Well, and that is the argument that this complaint was dismissed on the pleadings, and there are sufficient and an abundance of facts. There are the prior lawsuits. There are the harm that is being caused to Judicial Watch because of the missing information. These are continued violations, and interestingly, if I can just enlighten you, I apologize. Somebody did mention that it seems that the government did respond very quickly once litigation was filed, and that is true, and that has now happened in the past five similar litigations of identical records requests, which if this were to pursue and litigation were to proceed, that would come out that they are not complex FOIA requests and that they've been able to actually produce records. So can I ask you this question in that regard? So suppose that this is the way I think the statute works, and I'm not sure that this is right, but just suppose that for purposes of this question that there's not been an actionable problem every time the 20 days is missed, but that in some situations there might be. Suppose the government engages in, as Judge Rodgers described it, bad faith conduct or deletery conduct of some variety with respect to the 20 days, and in those situations at least the court comes down and says no due diligence. I'm entering an order right now that you need to turn over the documents because I can't for the life of me understand why you haven't turned over the documents yet. That's a possible scenario. There's also possible scenarios in which missing the 20 days is totally fine because the government's doing what it can. It just can't get everything together within 20 or even 30 days, and so it naturally goes to court. So you have those two possibilities. Is there anything in your complaint that alleges that what we're dealing with is the worst set of government conduct as opposed to the innocent set of government conduct? Because as I read your complaint, it proceeds on the theory that there's been a repetitive violation, and I'll use your conception of it, a repetitive violation of the 20 days. Ergo, there's a pattern or practice of violating the statute. Ergo, we're entitled to relief. And a response to that might be, well, the predicate, which is that there's been a repetitive breach of the 20 days, doesn't necessarily establish a pattern or practice of violating the statute because some, many, all of those might have been in the first category in that they were totally fine. So is there something in your complaint that says that it's not just the violation, the breach of the 20 days, but that these are breaches of the 20 days that are bad ones? I'm going to very simply no, there's nothing in the complaint itself that says that, and that's because we are still at the pleading stage. We have gone no further. There's been no real communication or anything. But at the pleading stage, you still have to allege something that gives you an entitlement to relief. We are alleging that the pattern and practice, this allegation is supported by all of these facts and would like to proceed further with the civil litigation and get into discovery, which while discovery is not really a FOIA issue, given the pattern and practice and evidence and facts that still need to be developed, that's where we would like to get to. There may be some we didn't mean to, it got lost, all that sort of stuff. We haven't reached that stage of the litigation itself, which is why we're here today appealing the dismissal. All right. Why don't we hear from the government? Okay. Thank you, Your Honor. May it please the Court, Sarah Carroll on behalf of the government. The district court correctly dismissed this case on the pleadings. DHS has satisfied the requests that underlay this suit. DHS has satisfied the requests that underlay the related suit that my colleague referred to. Satisfied the requests? What does that mean? Judicial Watch has conceded that DHS has produced all of the non-exempt documents. But that's not the issue. That's not the issue before us. Right. So Judicial Watch also makes this sort of conclusory claim that DHS must have a policy or practice of delaying response to its requests. But this court held in open America that an agency complies with FOIA by acting in good faith and with due diligence to process requests on a first-in-first-out basis. So can I ask you this? If an agency has a policy of just never complying with a 20 days and just suppose it's just issues, it just says, you know what, I'm fine with going to court actually every single time. We're just never going to respond with a determination within 20 days, and then we'll deal with it in court.  I'm not sure, Your Honor. I think in that case, I think there would still be a decent argument that the ordinary FOIA remedy is enough. A person who wants their documents can go to court and get the documents, which is what they're entitled to under FOIA. So why are you hesitating? Because if you're, as I understood the back half of your brief, your argument is that breach of the 20 days isn't a statutory violation. Yes, that's right, Your Honor. Then if that's true, then I take it maybe there's a situation in which there's three tiers. There's the missing of the 20 days that's okay, or two tiers. There's the missing of the 20 days that's okay and the missing of the 20 days that's not okay. But as I understood your brief, it was that the missing of the 20 days is never a statutory violation, and if it's never a statutory violation, then it seems like an agency could have just a blanket policy that says, we're fine with going to court every single time. We understand that that means there's not going to be administrative exhaustion and the secretary is never going to have a chance to weigh in, but we're fine with that. That's our policy. Right, that's right, Your Honor. The 20-day provision, you know, this court has made clear in the 2013 crew case, really relates to administrative exhaustion and a requester's ability to get into court. And, you know, it sort of plays a channeling role. It determines which cases have to go through an administrative appeal first and which cases can go directly to federal court. So then if you get into court in that situation, suppose you have an agency that does that, and then the court just says, what are you doing? Because the statute at least presupposes that every case isn't going to come to court, that there's going to be some dialogue between the requester and the agency, whether it's within 20 days or 30 days, and the government ought to be playing some role in filtering these cases so that we, the district courts, aren't subjected to every single piece of litigation every time there's a request made at this agency. Do you think the agency can come right back and say, sorry, that's just, we're entitled to do that under the statute, and that's the spot you're in? Or is there at least some situations in which a breach of the 20 days based on an intentional policy that says, you know, we're never going to even try within 20 days, at least some situations in which that would occasion, itself occasion, a lawsuit that would give rise to a remedy or an injunction against the government to start doing better with the 20 days? Well, once the case got into court, I think that the district court, as you mentioned earlier, would have to decide whether the agency, you know, had to really produce the documents right away. What determines that? So in a case like this where the agency produces the documents, but the requester has shown that over many cases and over many requests, the delays are, you know, not 20 days, but 200 days, 300 days. What then? So you say that the district judge here was correct in saying, well, there's no showing of bad faith, so first in, first out, fine. And you see that as the proper application of the statute? Yes, that's right. I mean, certainly, Your Honor, in an individual case, seeking a response to a FOIA request as Judicial Watch was doing in the first count of its complaint, a litigant could say to the district court, hey, look, we've been waiting a long time for these documents. What's going on? You should order the agency to produce them much more quickly. And at that stage, if someone wished to litigate that timeliness issue, the district court would have to consider whether the agency had been acting with due diligence and whether there were exceptional circumstances. The exceptional circumstances is it's a burden on the government to ask the district court for more time. And only if, as I understand it, 552A6C Romanet 2, exceptional circumstances does not include delay resulting from a predictable agency workload of requests. Right, unless the government can show that it's making reasonable progress in reducing the backload. So how could this case have properly been dismissed on the pleadings, given that that's, in effect, an affirmative defense or an opportunity for an agency to have some time before the court orders it to produce documents? It's an opportunity for the agency to get a little more time. In this case and the related case and other cases involving similar requests, as far as I'm aware, Judicial Watch has come to court, agreed to accept rolling productions. DHS has told the district courts, we think we can complete production by X date. Here it was March 18, 2016. And then the district courts have then entered an order requiring production by that date and supervised the production to make sure the agency complied. So there really was no opportunity in this case for DHS to try to litigate how much time it was entitled to because everyone agreed that the schedule DHS said was feasible was okay. And just to back up to your view of how Congress intended the statute to work was, agencies are going to have a lot of requests. In this case, I gather, the Secret Service gets maybe four requests a day. And so nobody really has a hope of getting timely 20 days, 30 days production. They have to go to court. So it's your view that that's what Congress envisioned, that if you want prompt production, you go to court, and then in court, we work it out under the supervision of the judge. And if we produce the documents, the person who's gone to court is not entitled even to fees. No violation of FOIA. That's right. In that case. Right, no violation of FOIA. What statute or language are you relying on for that? We're relying, I mean, I think we're relying just on the fact that while FOIA requires agencies to make records available to requesters, we're relying on this court's interpretation of the exceptional circumstances prong and the rest of the statutory scheme, which makes clear that the 20-day deadline really just relates to administrative exhaustion. Well, the legislative history of the statute says that Congress heard from the agencies about their concern about not being able to meet the 20-day deadline and said, we don't care. This is too important a matter. Open government, people are entitled to know what their government is doing, and the burden is on the government. And you mentioned open America, and as Judge Leventhal pointed out, there's a lot of dictum in that case, but I just want to be clear. If Congress said everybody has a right to this information, and the government has to figure out whether they can refuse to turn it over because it falls within one of the narrow exceptions Congress provided, then how can it be that an agency can, over a period of time, simply fail to produce this information? What I'm getting at is you want it dismissed, or not you, but your argument is that the district court properly dismissed this, even though we don't know what the situation is, and hypothetically there could be, following Judge Srinivasan's analysis, good delay and bad delay, as it were. But the point is it sort of shifts the burden. I'm just trying to understand that in terms of your response. And in open America, I mean, the court went on for pages reviewing what the agency's procedures were. We have no idea, basically, what the agency's procedures were. We know the results, but we don't know why they've done things. And it might well be the Secret Service says, look, we have greater priorities, all right? And these requests simply are not going to be given high priority. I think that Judicial Watch's allegations are entirely consistent with the state of the world in which the Secret Service is receiving a very high volume of requests. They received, I think, almost 1,500 requests in fiscal year 2015. Congress heard all that, and still wouldn't allow an extension of that initial period of time. Well, I think there's lots of information out there that shows that a whole lot of agencies are dealing with a lot of FOIA requests. What I'm trying to get you to focus on is Congress heard the agency's concerns. We're inundated with requests, all right? We don't have staff to handle them. And Congress said we are not going to extend that provision. The agency, it's its burden to figure out how to either organize, computerize, whatever, in order to, as we said in Crewe, at least tell the requester when they're going to get the answer. And, of course, this case raises another issue that would go beyond Crewe. Right. So there is this 20-day timeline, for sure, Your Honor, but this Court has made clear that when Congress imposed that timeline, it was simply providing a judicial remedy, that is, a right to go to court for people. So even though Congress thought open government was terribly important, I have to hire a lawyer, pay a filing fee, sit around and wait for the court's docket to get to my case, and then have motions practiced, probably have an appeal. And at what point does sort of the weight of what's going on shift? And isn't that the point of the Ninth Circuit's approach, in terms of it's an abuse of the system not to be able to ever provide this information within a 20-day period? Well, I think this Court has recognized in the Crewe decision that it was... You're over-reading Crewe. You're over-reading Crewe. Crewe talks about whether exhaustion is required and says it's not. Right. If one were to read it as limited to that question and as not resolving the question before us today about whether the 20-day deadline is also a requirement, it says the government must respond within 20 days. If it is also a requirement, and I understand that's not your argument, if it is also a requirement, what's the government to do? One question I have is about the practicalities here. When this information is produced, in what form is it produced? Do you have any idea? And maybe this is a better question for your opponent on rebuttal. I'm interested in, for example, Congress would like to incentivize agencies to anticipate common requests and organize the information in a way that makes it easy for the agency to produce. And in some ways we're in a better world now than when FOIA was enacted when the FBI had to look through index cards to figure out where the files were and go around the country to physically pull them. Here we have a lot of ways to make this easier. Is there not a database in the Secret Service that organizes the costs of providing security relating to different trips where you could just say, I'm going to pull that up? I assume there is, no? I'm not aware of one. As far as I'm aware, Your Honor, I think that the FOIA officers at the Secret Service have to go to individual Secret Service personnel and collect things from various offices. I don't think there's any... The government doesn't know how much it's spending on official VIP travel until Judicial Watch comes and asks? I think they requested all records related to the costs, and I don't think that all the records are stored in one central place. But you're saying maybe if all they wanted was the cost in a spreadsheet, they could get that much more quickly? I'm not sure, Your Honor. As far as I'm aware, they never modified their request to ask for that, so I'm just not sure how that would... And it never occurred to the government that maybe we could provide the information that the public is actually interested in in a much more efficient way because the government didn't feel pressured to do that? I'm just not sure, Your Honor. I'm not sure. All right, so back to the point, I guess, following up on Judge Pillard, government's over-reading pain, too. We never said it was a narrow exception. Indeed, the language in pain is much broader. Just the facts in pain led it. And I thought that was a theory in your brief, that there has to be some allegation of bad faith or deliberate misconduct. Pain, I don't know whether or when an intent requirement would be required, but pain involved egregious facts as the court found them. But my point, your brief keeps saying a narrow exception. We don't use that word. But in any event, I just want to understand, is that the minimum that you think is required to avoid dismissal on the pleadings? Some sort of intent allegation? I don't know whether intent would always be required, and I don't think this court necessarily needs to decide that in this case, but pain involved egregious circumstances. Pain itself did not even grant an injunction. Well, the district court said, one, the complaint doesn't tell me how. Two, the complaint doesn't tell me why. And indeed, counsel has conceded that it may just be a workload problem or there may be other reasons. Right, and on that point, your honor, I think this case is actually pretty analogous to cases like Twombly, in which, for example, in Twombly, the plaintiff alleged that the defendants had engaged in parallel conduct and then tacked on a conclusory allegation of an antitrust conspiracy. But Ms. Carroll, this is very different from Twombly, in that the burden is on the government to produce, and if it doesn't produce, to explain. The burden is not on the complainant to show anything more than a practice over time of failing to meet the obligations of the statute. But they haven't plausibly alleged a failure to meet the obligations of the statute. Nineteen requests delayed tenfold to twentyfold the statutory deadline. Five prior suits on the same topic. That's not a pattern? Your honor, I think that, I suspect that if Judicial Watch were entitled to discovery on this claim, I suspect that there would be a lot of other requesters that would be entitled to discovery about the FOIA practices of a lot of agencies. Does the statute have a production deadline? No, the statute does not impose any production deadline. So what the government faces is having district courts issue a lot of injunctions. I mean, that's sort of the theory Congress had, that you wouldn't want to be in court most of the time. You'd want to handle this. I mean, how much money is spent on presidential travel? Is that sealed information in the budget process? I'm not sure, your honor. But here, plaintiffs have received judicial supervision of the processing of their requests. And if Judicial Watch were to get relief or even discovery here, instead we would have district courts supervising discovery into the FOIA practices of a whole lot of agencies out there. Because a whole lot of people would say, the agency has not satisfied this administrative exhaustion. The floodgates argument. You know where that gets you. So the question is, just in this case, what more needed to be in the complaint, if anything? And I read your brief to say, the district court was correct for all the reasons. And you say, well, there should be some deliberate mishandling of plaintiffs' requests. You would need something pretty egregious, Judge Rogers. You would need some plausible reason to think that an agency had kind of abdicated its duties under FOIA. Perhaps, you know, Judge Srinivasan referred to orders in individual cases on requests where courts perhaps might find an agency had been acting in a dilatory manner. Maybe if you had some of those and you had some good reason to think, as in pain, that the agency was going to continue to shirk its FOIA responsibilities, maybe then we would be in the zone where it might be appropriate to at least, you know, understand why someone would try to. What happens as a practical matter in cases in which the 20 days missed? So the 20 days missed, the requester goes to court and says, I don't have to go up to the secretary now. I can go directly to court. And then suppose the district court looks at it and just says, I don't understand why the documents haven't been turned over yet. What does the district court do in that situation? So in some cases, I think, if, as Judicial Watch did here, the parties sort of agreed, okay, well, it will be okay to produce the documents by X date. My understanding is that district courts in this circuit sometimes just enter an order requiring production by that date and then make sure that that happens. If, on the other hand, the district court said this is taking too long and the requester was pressing to, you know, wouldn't agree with the agency to a deadline, then I think the district court would make this, you know, due diligence exceptional circumstances calculation. Well, suppose you have a situation then in which the allegations of the complaint, I'm not sure this complaint says that, but suppose you have a situation in which the allegations of the complaint says the following, the government routinely misses the 20 days, and then we're routinely having to go to court. And then every time we go to court, the court just turns around immediately and says, I don't understand why this is taking so long. I'm going to enter an order requiring the government to produce the documents within two weeks. And the requester who brings the complaint says, there's therefore a pattern or practice of situations in which district courts have to get involved and have to enter an order requiring the production of documents ex post. And that's just a waste of my time and money because I have to go to court every single time, and there's no explanation for why I have to go to court every single time. The district courts don't perceive there to be any explanation because the court's immediately just entering an order requiring this agency to produce documents within two weeks. That's a pattern or practice of FOIA violations, and this court to which I'm bringing the pattern or practice claim ought to be able to enter an injunction requiring this agency to do better. Would your position be that that complaint just fails to state a claim because the process is occurring just as FOIA envisioned it would, which is that it ends up in court, the court gets involved, and the court enters a production order, but that's all just the way FOIA works? Or would your position be, well, maybe in that situation there would be an actionable complaint stated in the complaint because we're alleging something where the courts have to enter an order every single time, and that's a problem under FOIA? I think we would likely argue that the FOIA system was working the way it's supposed to. This court has explained that where the agency doesn't satisfy the 20-day deadline, what the requester has a right to is judicial supervision to make sure that the agency proceeds to process. And in those cases, then, can the requester get fees? I don't know, Your Honor. Certainly I don't think the requester would have an automatic right to fees or anything like that. But would they be automatically out on asking for fees? Because I think they would say, I had to go through this elaborate thing of bringing a lawsuit. It turned out that the minute I did it, just like the last 10 times, the court just saw that there was nothing to the government's resistance and entered an order requiring the government to respond. It's costing me money to do this. I should be entitled to fees. Would the government say no? Because in order to be entitled to fees, there has to be a predicate violation to begin with. There's no predicate violation because the system is working as it was designed to work. Or would the government litigate the fees on its merits and say, we're not saying as a factual matter there could be no entitlement to fees. What we're saying is that our behavior wasn't egregious enough to warrant fees. I'm honestly not sure, Your Honor. I haven't litigated that kind of case, and I don't want to get out and say something. Let me ask you, Ms. Carroll, about the facts of this case. When the Secret Service does produce the documents, are you aware whether routinely they have exemptions that they claim, or is it really a matter of collecting the information and the kind of information that Judicial Watch has routinely been requesting and is made available? And I also would like to hear from Ms. Berk on that. I'm not 100% sure about that, Your Honor. I don't remember seeing a Vaughn Index or anything in this case. And I know that Judicial Watch said it was satisfied with the production of non-exempt documents here, but I don't know for sure whether that meant anywhere. So here's my question. This has been a long course of interaction between the Secret Service and Judicial Watch. Is it really not feasible for the Secret Service when it gets yet another of this familiar sort of request? Instead of putting it at the bottom of the pile, to shoot out a letter, a standardized, computerized letter to Judicial Watch saying we plan to give you these documents, which would, if they do that within 20 days, meet their statutory obligation? It's a good question, Your Honor. So I suppose the question is whether, even without having located the documents, the agency could make the determination, okay, we know what these documents are going to be, we're going to produce them, and we know kind of how this will play out. I think one problem with that is that it's hard for me to see how the agency could then gather and produce all the documents without jumping Judicial Watch ahead of everyone else who had filed requests before Judicial Watch. Is it your understanding that the statute requires lockstep production, that if an agency can see efficiencies in a subset of type of production, it cannot organize those and be proactive in production? That's not the way you read the statute, is it? The statute, I think, allows multi-track processing. Yes. So it's a simple request. Yes. And, in fact, calls for efficiencies, calls for agencies to look for ways to make things available in a format that's convenient and efficient. The statute certainly does allow that, Your Honor. I'm not persuaded or I think it's not likely that the Secret Service would view these requests as simple. And Judicial Watch submits dozens of FOIA requests to the Secret Service, so essentially requiring the Secret Service to favor Judicial Watch's requests over other ones would really just be hurting a whole lot of other people who submitted requests before Judicial Watch did. Yeah, I did think it might vary agency to agency in terms of the time the agency may need, but following up, if there was some automatic production of a form, people fill out. And so Judicial Watch says all of these requests were about presidential or travel expenses, changing the name from time to time of who was doing the traveling. But once the agency has decided that, well, travel requests involving X official going to X country, that comes within a certain exemption. But the others, you know, don't. So why couldn't, I mean, where is the incentive for the agency to do something like that under the process you described, unless you file suit? I think the agency, I assume that the Secret Service doesn't enjoy being sued by Judicial Watch over and over and going to court. I think that if the Secret Service could easily set up some way to satisfy these requests much more quickly, it probably would. I don't think Congress was concerned about enjoyment. Right. It was concerned about releasing this information. Right. So there's a declaration that DHS submitted in response to Judicial Watch's discovery motion, which the district court didn't consider. But it explains it. You rely on in your brief, and that was another question I had, sort of putting forth defenses here. So you knew what the argument that was about to be made was all about. You were on notice that exactly what Judicial Watch was asking for, that they had repeatedly asked for, not you personally, but the Secret Service or Homeland Security. So the fact that these were repetitive suggests that maybe they could have been handled differently, understandably. And where is the incentive for the agency ever to do that, rather than just sit back and say, well, hire a lawyer and go to court? I have no reason to think that the Secret Service does not want to satisfy Judicial Watch's request as quickly as it can in good faith. It's just that it receives many, many hundreds of requests from other people as well who have an equal right to seek information from the government. And with limited staff, it's difficult to respond to all of those requests and also respond to you. Well, maybe they do and maybe they don't.  As opposed to somebody who has a patently frivolous request. Any other questions? No? Anything of a point you want to make? I guess the two basic points that maybe I've already made that I would like to reiterate are, number one, OIA has a scheme set up for dealing with these kind of things, and Judicial Watch is essentially seeking to make an end run around it. And second, I would point out that the relief that Judicial Watch is requesting here, the people that it would hurt really are the hundreds of other people who have submitted requests, many of which might not be institutional FOIA requesters who wouldn't be able to bring a broad suit like this and seek the relief that Judicial Watch is seeking here. Thank you. Thank you. All right. Counsel Ford-Pillard will give you a minute. I appreciate the opportunity to address a couple of issues that each of you raised with opposing counsel. Specifically, Judge Pillard, as far as the format and- So you know. Judge Pillard. Pillard. I apologize. All right. With respect to the request to the Secret Service, and specifically the information that we're looking for in our complaint, it does say it's a routine request that we send out. It is one office. They are hotel, I think car expenses. There's a number of different expenses. They are data sets. We are not looking for communications. This isn't an email issue. They are relatively easy to the extent, which is another aspect that we would like to pursue through discovery and the litigation process, that when we did sue on this 19 requests that had gone undetermined over a period of two years, the Secret Service produced all records in less than four months. Let me just clarify. If they kept a database anticipating the VIP travel request would be coming in, FOIA request would be coming in, and they just had a field that said, you know, trip to Aspen, hotel, meals, you know, transportation, and produced that to you on a regular basis, would that be satisfactory? I think my client would be very open to that. Is it your experience that agencies routinely respond to judicial watch requests by creating a database that's designed to respond to judicial watch requests? That has not been our experience, no. But if you would like to order it, my client would be very, very happy. Can I ask you this? Your complaint says that, and I'm quoting from paragraph 22, I think, that it's plaintiff's FOIA request in particular regularly failing or refusing to comply with FOIA. So is that your – do you think that the agency is required to produce documents within some statutory timeframe? They are required to respond and make a determination. If they are going to make a determination that records will be produced but can't be done so for six months or that type of thing, that is within the statutory obligations they do meet. Right, but your complaint speaks in terms of producing within the statutory timeframe, and I think your request for relief speaks in terms of producing? Well, we didn't receive anything, even responses as far as whether or not they will be. Right, but it sounds like what your complaint says you're entitled to is not just a response. It's an entitled production. We are entitled to production if they're – Within a statutory timeframe? I – Within the time periods required by FOIA is what the complaint says. Required by FOIA, yes. And is there – does FOIA impose a requirement with respect to production? I believe it does, yes. What is that? Is it 30 days unless there are extenuating circumstances or have been worked out between the parties that reported by you? You need FOIA to require production within 30 days, production of the documents, not the determination. I apologize. I don't – whether I'm drawing a blank or I just don't have it right in front of me, I would have to get back to you on that. Okay, that's fine. And just to sort of follow up on the simplicity and routine, non-complex requests that are at issue here and actually the reason that we did pursue and are seeking and would like to pursue litigation and discovery on a policy and practices claim is that most recently we have filed – if I may, I'm going to take a step back because I wanted to respond to something that opposing counsel had mentioned as far as responding. I think you have to wrap it up here. Wrapping it up. As far as responding to your question, though, as what more would need to be pled in the complaint to make it a well-fled complaint to pursue, I believe she said something more or something that would be a little bit more egregious as showing that they were not – they were continuing to shirk their responsibilities. Since the filing of this complaint, we have filed additional complaints for a total of 52 requests that have gone undetermined, and that is for a total of 11 litigations that Judicial Watch has had to pursue in order to receive these documents. All right, thank you. Take the case under advisement.
judges: Rogers, Srinivasan, Pillard